UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MARIA KENNEDY and DOUGLAS GOEBEL | * |
| | * CIVIL ACTION |
| VERSUS | |
| | * NO.: 04-756-B-M1 |
| FERRARA FIRE APPARATUS INCORPORATED | * |

**********************************************************************

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COME plaintiffs who oppose the defendant's summary judgment and respectfully requests that this Court deny Ferrara Fire Apparatus's (hereinafter referred to as Ferrara) summary judgment motion.

### I. FACTUAL BACKGROUND

Both Plaintiffs were hired by Ferrara on October 3, 2003. They were interviewed by and hired by Mr. Craig Ledoux who is the Human Resource Manager. Plaintiffs were to work Friday, Saturday and Sunday twelve hours each day. Plaintiffs were told that Dave Collins was their direct supervisor. (Kennedy deposition, Exhibit 1, page 42, lines 23 -25). Dave Collins introduced plaintiffs to Billy Boyd and advised that Mr. Boyd was his assistant supervisor and trainer. (Kennedy Deposition, page 45, lines 11-12).

Thirty minutes after meeting Mr. Boyd on her first day at work, he told Ms. Kennedy that "it was nice to have a piece of straight minge for a change". (Kennedy deposition, page 50, lines 15-17). That same day Mr. Boyd asked Ms. Kennedy if he significant other (plaintiff Douglas Goebel) had a adequate Johnson (penis) and whether he was a good shag. (Kennedy deposition, page 60, lines 4 - 23) and (Ms. Kennedy's journal, Exhibit 2, page 1). Later that same first day,



Billy Boyd asked Ms. Kennedy and Douglas Goebel if they liked to smoke marijuana and offered to sell them some anytime. (Kennedy journal, page 2). Finally, Mr. Boyd's final comments to Ms. Kennedy just before she completed her first day was to offer her a slap and a tickle whenever she wanted. (Kennedy journal, page 2 and Kennedy deposition, page 62, lines 11-15).

On Ms. Kennedy's second day at work, Billy Boyd began the day by asking whether Douglas Goebel was any good in bed and did she get her minge (slang for vagina) pleased the night before. (Kennedy journal, page 3 and Kennedy deposition, page 63, lines 15-18). Ms. Kennedy told him to mind his own business to which Billy responded by laughing and rubbing his crotch. (Kennedy deposition, page 64, lines 3-14). Later that day, Billy Boyd told Douglas and Ms. Kennedy that he would "love to do Val (another female employee) because she was hot as shit". (Kennedy journal, page 3). Further on that second day of work, Billy Boyd asked Ms. Kennedy if she thought Craig Ledoux (Human Resource manager) took it in the ass and commented that Ledoux sucked Ferrara's c-ck to get the job. (Kennedy journal, page 4). Mr. Boyd's parting comments to plaintiffs that second day on the job was that they would be fine as long as as he liked them and a little nooky always goes a long way in how he feels about new gals. (Kennedy journal, page 4 and kennedy deposition, page 67, lines 6-10).

Billy Boyd was off for approximately one week and his first day back to work asked Ms. Kennedy if her p-ssy was taken care of by the short d-cked yank. (Kennedy journal, pages 6-7 and Kennedy deposition, page 77, lines 17-25 and page 78, lines 1-3). The rest of the day he offered Ms. Kennedy cigarette breaks if she would give him a quick suck job. Ms. Kennedy told him what to do with his cigarettes and again he laughed and rubbed his crotch. (Kennedy deposition, page 78, lines 24-25 and page 79, lines 3 - 25). Later that day (October 10, 2003), Billy showed Ms. Kennedy a bag of marijuana that pulled from his lunch box and asked her if she

wanted any to which she responded no thanks. (Kennedy deposition, page 80, lines 19-25, and Kennedy journal, page 7). ON that same day, Ms. Kennedy approached her direct supervisor, Dave Collins, and began the conversation by advising that she could not work with Billy Boyd because he is a sick individual. Dave Collins responded by asking "what else is new" and walked away from Ms. Kennedy. (Kennedy deposition, page 82, lines 19-25 and page 83, lines 1-18). Of noteworthy importance is the fact that plaintiff Douglas Goebel also complained about Billy Boyd to Dave Collins around the same weekend of October 10, 2003. Mr. Goebel asked Mr. Collins to tell Billy to lay off with the mouth because Billy was getting really disgusting. Mr. Goebel also advised that Ms. Kennedy did not need that type of environment and that she simply wanted to do her job. Dave Collins responded by stating he works with a bunch of bitches every damn day, that he did not want to hear Mr. Goebel's shit and to get back to work. (Kennedy deposition, page 54, lines 4-25 and page 55, lines 1-25).

On October 11, 2003 Billy Boyd looked at Ms. Kennedy and stated that he would like to "tap" that while he held his crotch. Later that same day, plaintiff Mr. Goebel asked Billy Boyd if he had a problem since Billy was holding his crotch throughout the day. Billy advised Mr. Goebel that it was a little jock itch, but when Mr. Goebel left the area Billy told Ms. Kennedy he was grabbing it because it was growing. (Kennedy journal, page 8 and Kennedy deposition, pages 85-87). Later that day Billy told Ms. Kennedy that another female employee needed some good d-ck and that she was Dave's little crack whore. (Kennedy journal, pages 8-9 and Kennedy deposition, page 88, lines 21-25 and page 89 lines 1-25). Finally towards the end of the day, Billy Boyd told Ms. Kennedy it was time for a smoke break and a blow job. Ms. Kennedy is certain that Dave Collins heard Billy Boyd's comments because Mr. Collins was standing right next to Ms. Kennedy. (Kennedy deposition, page 93, lines 17- 25 and page 94, lines 1-9). Upon

Billy Boyd making his comments, Ms. Kennedy advised him that those types of comments are examples as to why she no longer wished to have to work with Mr. Boyd. Kennedy deposition, page 94, lines 10-25). Mr. Collins responded by telling Ms. Kennedy to stop her f-cking moaning. Kennedy deposition, page 94, lines 8-25

On October 12, 2003, Billy Boyd told Ms. Kennedy that he would give it to her good because he did not think her fella (Douglas Goebel) could take care of her good British Lass. (Kennedy journal, page 9, and Kennedy deposition, page 91, lines 5-25.) After that, Billy Boyd continued to make sexual comments to Ms. Kennedy through out the day. ( Kennedy Journal, page 9).

On October, 18, 2003 Billy Boyd asked Ms. Kennedy to go out back, smoke marijuana with him and have a bit of fun. Ms. Kennedy rejected his advances. (Kennedy journal pages 11-12 and Kennedy deposition, page 98 lines 12-25 and page 99, lines 1-16).

On October 19, 2003, Billy Boyd continuously questioned Ms. Kennedy as to whether she liked to swallow or spit. Next he stated to her that if the yank (Douglas Goebel) had a bigger d_ick that she could try it and that Billy was willing to let her suck him off . The rest of the day Billy would look at Ms. Kennedy and rub his crotch. (Kennedy journal, pages 12 -13 and Kennedy deposition page 103, lines 11-19).

On October 24, 2003 Billy told Ms. Kennedy to show her tits. Later that same day Billy told Ms. Kennedy to show her p_ssy. (Kennedy journal, pages 13-14, and Kennedy deposition, page 104, lines 5-10 and page 105, lines 3-8).

On October 25, 2003 Billy Boyd asked Ms. Kennedy if she wanted to shag. Later he insisted that she straddle him while she attempted to drill a bore hole on a truck. Ms. Kennedy advised Billy to step to the side and his response was that he preferred to be straddled. Dave

Collins was present during the conversation as well as Douglas Goebel. At that point Douglas complained to Mr. Collins by stating "Now damn it, look Dave this is the shit I'm talking about." Dave Collins told Douglas to mind his business and go back to work. At that moment, Ms. Kennedy asked Dave Collins what he was going to do about Billy Boyd and advised him that she could no longer work with Mr. Boyd. Dave Collins said nothing to Ms. Kennedy and simply walked away. After Dave Collins walked away, Billy asked Ms. Kennedy if she had a wet spot. Later Billy commented that he wanted to "tap that" while he watched Kennedy work. deposition, page 106, lines 1-25 and page 107, lines 1-25 and page 108, lines 1-11 and page 109, lines 7-14 and Kennedy journal, pages 14 -15.

On October 26, 2003, Billy asked Ms. Kennedy "so are you and Doug gonna get married or is his d_ck too small to please your minge"? Later that same day, Billy told Ms. Kennedy that he would make anything fit in her hole. (Kennedy deposition, page 110, lines 13-19 and page 111, lines 7-21 and Kennedy journal, pages 15-16).

On the morning of October 31, 2003 Billy asked Ms. Kennedy how her minge was doing. Later Billy asked her if baldy(Douglas Goebel) gave her some d_ck that week. (Kennedy deposition, page 116, lines 8-19 and page 117, lines 17-23.

On November 7, 2003 Billy refused to look at Ms. Kennedy or Douglas Goebel much less talk to them. Ms. Kennedy then approached Dave Collins and asked what duties they should perform for that day's work. Dave Collins responded by telling them to do whatever they wanted and then left the premises for the day. ( Kennedy deposition, page 124, lines 4-15 and Kennedy journal, page 17).

It is important to note that in addition to the above described complaints by Ms. Kennedy to Dave Collins, Ms. Kennedy also complained to Dave Collins about Billy Boyd's actions

practically every time she saw Dave during her last two weeks of employment. Kennedy deposition, page 112, lines 13-25). In addition, Dave Collins warned Ms. Kennedy and Douglas Goebel that if they walked through the doors leading to Mr. Ledoux's office that they would be f_cking fired. (Kennedy deposition, page 121, lines 17-25). Further, Douglas Goebel complained to Dave Collins the second or third day of work about Billy Boyd's harassment of Ms. Kennedy. (Goebel deposition, page 33, lines 7-10, Exhibit 5). Dave Collins response to Mr. Goebel was, "I'll handle it and just get your ass back to work". Goebel deposition, page 33, lines 19-25 and page 34, lines 1-2). In fact, Mr. Goebel approached Dave Collins and complained about Billy Boyd's harassment on two different occasions and Dave 's response was the same for both. (Goebel deposition, page 34, line 5 and lines 2-25 and page 35-36 and page 37, lines 1-8). Finally, Mr. Goebel made requests with Dave Collins on several different occasions to see Craig Ledoux and and Mr. Collins never allowed it or simply ignored the requests. One day Mr. Goebel decided to bypass Dave Collins and go see Craig Ledoux. As Mr. Goebel neared the doors that led to the front office where Craig Ledoux (Human Resource manager) was located, Dave Collins told him, "you go through those doors and you're fired". (Goebel deposition, page34, lines 5-21).

**ARGUMENT**

Dave Collins was employed by the defendant as a supervisor and direct supervisor of the plaintiffs. (Ferrara Organizational Chart, Exhibit 3). Dave Collins introduced Billy Boyd to the plaintiffs as an assistant supervisor and trainer. (Previously referenced in Kennedy deposition). Plaintiffs reported directly to Billy Boyd everyday and carried out his work assignments and instructions. Billy Boyd was in a position to report unfavorably on plaintiffs work. Arguably,

Dave Collins could not reasonably compare the plaintiffs work with that of other workers without the help of Billy Boyd because Billy was the individual handing out assignments, training personnel and checking employee's work. Therefore, Billy Boyd was a supervisor and agent of Ferrara. <u>Paroline v. Unisys Corp.</u>, 879 F2d 100 (CA4 1989); <u>Tomka v. Seiler Corp.</u>, 66 F3d 1295 (CA2 1995); <u>Dortz v. New York</u>, 904 F. Supp. 127 (SD NY 1995); <u>EEOC v. Horizons Hotel Corp.</u>, 831 F Supp 10 (D PR 1993); <u>Sims v. Montgomery County Commission</u>, 766 F Supp 1052 (MD Ala 1990). Dave Collins certainly was a supervisor and agent of Ferrara. Ferrara is responsible for the acts of its supervisors (Dave Collins and Billy Boyd) regardless of whether the company knew or should have known, although in this case it definitely had knowledge through its agents Billy Boyd and Dave Collins. In addition, if the jury found Billy Boyd to be a co-employee then Ferrar is still responsible because it knew or should have known of the conduct and failed to take corrective action. Billy Boyd aside, Ferrara had actual and constructive knowledge through Dave Collins who not only witnessed certain harassing actions of Billy Boyd but also received complaints about the man.

Thus this case includes both quid pro quo and hostile work environment. Quid pro quo was established when Ms. Kennedy asked Billy Boyd how she and Douglas were doing at their jobs, he advised that they would be fine as long as he liked them and a little nooky goes a long way with the gals. Of course, all of Billy Boyd's described actions should be considered hostile and harassing. Dave Collins actions were hostile and harassing as well. His "quit your f_cking moaning", "get your asses back to work", and "I work with damn bitches every day" comments in addition to his continuous refusal to report Billy or take action himself should be considered hostile and harassing. Let us not forget his threat to fire Mr. Goebel if he attempted to go see Craig Ledoux.

Also, there exists an issue of material fact as to whether the defendant exercised reasonable care to prevent the harassment. Apparently no one else was around on Saturdays and Sundays besides Billy Boyd and Dave Collins. Does the company escape liability by leaving the employees in the hands of Billy and Dave who were in and of themselves the problem? Can the defendant insulate itself by turning its back on the weekend employees? There has been no evidence of an investigation or corrective measures taken by the defendant before plaintiffs were fired. There has been no evidence of an investigation after they were fired. The fact that Billy Boyd quit as opposed to taking the drug tests (which lends credence to what the plaintiffs have been saying all along) does not void the need for an investigation. What about Dave Collins actions and inactions? Does that not merit an investigation? What about training or the lack thereof? There has been no evidence of training for any employees much less supervisors. Perhaps there is a great need for review and updates if indeed any sexual harassment training has occurred in the past.

Ferrara is also liable for the intentional infliction of emotional distress upon the plaintiffs by both Billy Boyd and Dave Collins.

Finally, both were retaliated against because Ms. Kennedy refused Billy Boyd's advances and both complained to Dave Collins. It did not help either that Mr. Goebel attempted to see Craig Ledoux. These two were considered a burden not because of their work product as stated but because they did not accept the harassment without complaining. Speaking of work product, why were the plaintiffs compared to only eight individuals in the weekend department when there were thirty people in that department at that time? (Defendant's answers to Interrogatories 3 and 4, Exhibit 4). How is it fair to the plaintiffs or any employee that Dave Collins, who was also part of the problem, was the person making the comparisons? If the company never investigates the

plaintiffs allegations how does the company know that Dave Collins is qualified to make the employee comparisons? How does Dave Collins by himself make the comparisons when Billy Boyd was the person handing out the work assignments and overseeing their work and responsible for all training as well? How could he reasonably compare without the help of Billy Boyd who again was part of the problem? There was nothing fair about what happened to the plaintiffs. As this court is aware, there can exists a public policy exception to the at will employment doctrine in sexual harassment cases.

Although it has no merit for the purposes of this summary judgment, the defendant's insinuation that Ms. Kennedy was offering some sort of sexual favor will be addressed. The defendant chose to quote only part of the plaintiff's answer to a question on pages 114-115 of Ms. Kennedy's deposition. The conversation was about Ms. Kennedy being told that Craig Ledoux had performed certain sexual acts on the owner of the company to get his job. Ms. Kennedy responded and only part of her response was stated in the defendant's memorandum. Such as on page 115, lines 3-6 wherein Ms. Kennedy finished her sentence by commenting whether Craig Ledoux was aware of the comments about how he got his job. In addition, Ms. Kennedy goes on to say that she would like to see the owner because she would tell him what was being said about Craig Ledoux. Further, she states what was being said about Craig Ledoux was out of place. (Kennedy deposition, page 15, lines 1-25).

In conclusion, there exists both quid pro quo and hostile work environment sexual harassment of the plaintiffs. The defendant had both actual and constructive knowledge of the harassment through its supervisors, Dave Collins and Billy Boyd. In addition, the defendant is liable for its supervisors harassing actions even without knowledge. Both plaintiffs were retaliated against. There was never any action taken by the defendant to correct the harassment

or to investigate the harassment. There is no evidence of sexual harassment training of all employees much less supervisors. There is no evidence of a fair comparison of the plaintiffs to their co-employees. The defendant is liable for the intentional infliction of emotional distress perpetrated by both of its supervisors against the plaintiffs. Therefore, the defendant's motion for summary judgment should be denied by law and due to the many issues of material fact.

Respectfully submitted,

Law Office of Craig P. Hart

_____
Craig P. Hart (22417)
19348 N. 4th Street
Covington, Louisiana 70433
(985) 892-7090
Fax: (985) 871-7816

CERTIFICATE OF SERVICE

I hereby certify that I on this date served a copy of the foregoing memorandum on counsel of record for all parties to this proceeding, via fax, and by mailing the same by United States mail, properly addressed, and first class postage prepaid to:

Brenda Verbois
7904 Wrenwood Blvd. Ste C
P.O. Box 80179
Baton Rouge, LA 70898-0179

Baton Rouge, LA on this 20th day of June, 2005.

_____
Craig P. Hart